**T. R. BUMPUS, Appellant,**

**v.**

**Hayward J. DRINKARD'S ADM'X (Anna Drinkard), Appellee.**

Court of Appeals of Kentucky.

May 6, 1955.

Reed & Hines, Paducah, for appellant.

Wheeler & Marshall, Paducah, for appellee.

SIMS, Judge.

Plaintiff, Anna Drinkard, as' administratrix of her husband, Hayward J. Drinkard, brought this action to recover $25,000 damages to the estate of her decedent, whose death she averred was caused by the negligence of defendant, T. R. Bumpus. The answer denied defendant was negligent and pleaded contributory negligence on the part of the decedent, and by way of counter claim defendant sought to recover $1,600 damages done his car and for personal injuries he received in the accident. The trial resulted in a verdict for plaintiff in the sum of $10,000.

In seeking to reverse the judgment defendant insists the court erred: (1) In not directing a verdict in his favor; (2) in instructing the jury; (3) in refusing to limit the judgment to the amount awarded plaintiff by the Workmen's Compensation Board.

■ Plaintiff as appellee argues that due to the form of the notice of appeal, the only question before us is whether the court erred in refusing to limit the judgment to the sum awarded by the Board. We will first take up this question raised by her.

The notice of appeal reads:

"Notice is hereby given that the defendant, T. R. Bumpus, appeals to the Court of Appeals from the final judgment of the McCracken Circuit Court, entered in favor of the plaintiff, Anna Drinkard, as Administratrix of the estate of Hayward J. Drinkard, deceased, on the 26th day of November, 1953, from the order of January 18, 1954, refusing to limit the judgment to the amount paid and to be paid by the Fidelity and Casualty Company, and from the order of June 10, 1953, sustaining demurrer and motion to strike paragraphs III and IV of the defendant's answer, and motion to strike the second literary paragraph of paragraph I of defendant's answer."

The pertinent part of CR 73.03 reads:

"The notice of appeal shall specify the parties taking the appeal, and shall designate the judgment or part thereof appealed from."

Even a casual reading of the notice of appeal shows it meets the requirements of CR 73.03. The notice not only specifies the appeal is from the final judgment, which is sufficient within itself, but in addition thereto specifies certain orders which he seeks to have reviewed. Our Rule 73.03 is quite similar to Federal Civil Rule 73(b), 28 U.S.C.A., and under Long v. Union Pacific Railroad Co., 10 Cir., 206 F.2d 829, and Fahs v. Merrill, 5 Cir., 142 F.2d 651, construing the federal rules, the notice in

the case at bar complies with CR .73.03. See Clay CR, p. 600.

■ There is no merit in defendant's contention that the court should have directed a verdict in his favor. The collision occurred at the intersection of 27th and Washington Streets in Paducah. There was no traffic light nor were there any stop signs at the intersection. There is a direct conflict in the testimony. Four witnesses testified as to how the accident happened; three of them were disinterested ladies testifying for plaintiff and the fourth was defendant testifying for himself. The three ladies testified Drinkard was driving a milk truck east on Washington Street and defendant was driving a Buick car south on 27th Street. However, defendant testified he was driving west on Washington Street and that Drinkard was driving south on 27th Street. One of the ladies testified the truck was traveling 35 or 40 miles an hour and the car was going faster than that. Another lady did not give the speed of the car but testified both vehicles "were going pretty fast, too fast for that corner." The third lady could not estimate the speed of either vehicle.

Defendant testified he was traveling around 20 miles an hour and the truck was making 35 or 40 miles an hour and that he reached the intersection 15 or 20 feet ahead of the truck. When asked to describe how the accident happened, defendant testified:

"Well, when I come into the intersection there I noticed the vehicle started into the intersection at the same time. Evidently he was traveling at a greater rate of speed than I was because it showed I hit him in the side, but when I seen him I applied my brakes and cut it to avoid the accident, you know."

A diagram shows Washington Street is 66 feet wide and 27th Street is 60 feet wide. Pictures taken at the scene of the accident soon after it occurred, and introduced in evidence, show the truck was hit on its left side just in front of the door by the right front of the car. The truck had sliding doors which were opened and the force of the collision threw. Drinkard out of the truck (he was killed almost instantly) and caused the truck to change its course practically at right angles and run into the yard of Mr. Seamon at the southwest corner of the intersection. The car came to a stop on the southwest side of 27th Street near Seamon's yard. There were no skid marks on the street showing brakes had been applied on either vehicle with sufficient force to cause them to skid.

From the testimony and physical facts it is apparent Drinkard was not guilty of contributory negligence as a matter of law and that this is a case for the jury. Although the evidence is highly conflicting, the jury very logically could have found the accident was caused by defendant's negligence and the verdict is abundantly supported by the evidence.

■ We cannot agree with defendant the court erred in not giving an instruction he offered, that it was Drinkard's duty to have the doors closed on the truck he was driving. Defendant cites no authority to support this proposition and we have found none. He does refer us to KRS 189.020 which provides: "Every vehicle when on a highway shall be so equipped as to * * * protect the rights of other traffic, and to promote the public safety." But this statute lacks much of requiring a milk truck to be driven with its sliding doors closed. It is common knowledge that milk trucks are often driven on city streets with their sliding doors open.

■ Defendant complains of the second instruction dealing with the right of way at the intersection because instead of requiring a vehicle to yield the right of way at the intersection to another vehicle approaching from the right, unless the vehicle approaching from the right is farther from the intersection than the other vehicle, the instruction required the vehicle to yield the right of way "at the intersection of its path with the path of another vehicle approaching from the right unless the vehicle approaching from the right is farther from the point of intersection of

the paths of the two automobiles than such first named vehicle." The instruction as given is in the language of KRS 189.330 (2) dealing with the right of way at intersections which uses the terms "intersection of their paths" and "the point of intersection of their paths".

In Kentucky Livery Co. v. Meyers, 196 Ky. 822, 245 S.W. 882, and again in Fall City Ice & Beverage Co. v. Scanlan Coal Co., 208 Ky. 820, 271 S.W. 1097, we approved the use of the term "intersection of their paths". In Tate v. Shaver, 287 Ky. 29, 152 S.W.2d 259, we were asked to say that when the Legislature used "paths" in the statute it had reference to the streets on which the vehicles were traveling. But we did not reach the question in the Tate case. See pages 261 and 262 of 152 S.W.2d. We now decline to give this meaning to "paths" as used in the statute, in view of the fact that the Meyers and Scanlan cases have been on the books for more than twenty-five years, and the statute using the words "intersection of their paths" is likewise of long standing.

■ One criticism defendant makes of the speed instruction is that it said neither party should operate his car at a greater speed than is reasonable and *proper*, while KRS 189.390(1) says no one shall drive at a greater speed than is reasonable and *prudent*. We can see no difference in a speed that is *proper* and one that is *prudent*, hence this objection is not well taken.

■ But there is merit in defendant's criticism of that part of the instruction on speed which imposed a duty on each driver to operate his vehicle at a reasonable and proper rate of speed having regard for the traffic and condition of the highway and not to drive at a speed greater than 35 miles per hour (as the accident occurred in a residential district), "unless you believe from the evidence that considering the traffic and the use of the streets and other surrounding conditions shown in the evidence, a rate of speed exceeding 35 miles per hour was not unreasonable or improper driving in which latter event the stated miles per hour rate of speed does not apply."

Prior to its amendment in 1950, KRS 189.390 made a violation of the statutory speed limit only prima facie evidence of unreasonable and improper driving. But when the statute was amended in that year, it made a violation of the speed limit unlawful. Therefore, it was error for the court to instruct that the statutory speed limit could be disregarded if the jury believed in the circumstances that it was not unreasonable and improper driving to exceed it. In its amended and present form KRS 189.390(2) provides that where no conditions exist that require a lower speed, then a speed not in excess of the statutory limit (35 miles per hour in this instance) shall be lawful. But this provision cannot be construed to mean that under certain favorable conditions the speed limit may be exceeded without violating the statute.

There was some evidence the truck was exceeding the speed limit, and there can be no doubt that the speed of each of these vehicles was a material factor in causing the accident. If Drinkard violated the statutory speed limit, he was guilty of negligence per se, Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W.2d 763, and it was prejudicial to defendant for the court to instruct that the statutory speed limit would not apply if the jury thought in the circumstances the violation thereof was not unreasonable and improper driving. For this error we are forced to reverse the judgment.

■ There is no merit in defendant's contention that the court erred in refusing to limit the judgment to the amount to be paid Mrs. Drinkard under the award of the Workmen's Compensation Board. It is provided in KRS 342.055 that if a third person injures an employee, the latter may proceed against his employer for compensation and against the third person for damages, but he cannot collect from both. This section further provides that either the employer, or his insurance carrier, having paid compensation or become liable

therefor, may recover in his or its own name or that of the injured employee from the third person, but not to exceed the indemnity paid or payable to the injured employee. We have construed this section to mean in a case like the one at bar that the third person must satisfy the judgment and the court will make proper distribution of it between a dependent of the deceased employee and the insurance carrier of his employer. In reality the employer or its insurance carrier is entitled to be reimbursed out of any judgment that may be recovered by Mrs. Drinkard for all sums it has or may pay her in satisfaction of the compensation award, and she would be entitled to the residue. Maryland Casualty Co. v. Huffaker's Adm'r, 227 Ky. 358, 13 S.W.2d 260; Rogers v. Price, 290 Ky. 153, 160 S.W.2d 371.

For the reasons given the judgment is reversed for proceedings consistent with this opinion.